```
          IN THE UNITED STATES DISTRICT COURT FOR THE
                   EASTERN DISTRICT OF OKLAHOMA
```

LYNN A. THOMAS,                )
                               )
            Plaintiff,         )
                               )
v.                             )    Case No. CIV-12-123-FHS-KEW
                               )
CAROLYN W. COLVIN, Acting      )
Commissioner of Social         )
Security Administration,       )
                               )
            Defendant.         )

## REPORT AND RECOMMENDATION

Plaintiff Lynn A. Thomas (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on February 24, 1965 and was 45 years old at the time of the ALJ's decision. Claimant completed her high school education through the eleventh grade. Claimant has worked in the past as a nurse's aide, laundry aide, secretary/bookkeeper, dishwasher, cook, restaurant manager, retail clerk, and waitress. Claimant alleges an inability to work beginning April 1, 2004 due

to limitations resulting from rheumatoid arthritis, Raynaud's disease, weakness and pain in her left side post lung surgery, vision problems, headaches, bilateral shoulder problems, elbow pain, carpal tunnel syndrome, back pain, knee problems, Morton's neuroma tumor in her left foot, sleep problems, and medication side effects.  Claimant also alleges she suffers from depression, anxiety, concentration problems, and irritability.

**Procedural History**

On November 7, 2006, Claimant protectively filed for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act.  Claimant's application was denied initially and upon reconsideration.  On August 5, 2010, an administrative hearing was held before ALJ Deborah L. Rose in Tahlequah, Oklahoma.  On August 25, 2010, the ALJ issued an unfavorable decision on Claimant's application.  The Appeals Council denied review of the ALJ's decision on February 23, 2012.  As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal.  20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation.  He determined that while Claimant suffered from severe

4

impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform a full range of sedentary work.

### Error Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to adequately develop the record related to Claimant's hand, wrist, and/or elbow impairments; (2) finding Claimant could perform a full range of sedentary work which was not based upon substantial evidence; and (3) applying the grids to find Claimant was not disabled despite the presence of nonexertional reaching impairments.

### Duty to Develop the Record on Impairments

In his decision, the ALJ determined Claimant suffered from the severe impairments of rheumatoid arthritis and Morton's neuroma in her foot. (Tr. 13). She also found Claimant retained the RFC to perform sedentary work. (Tr. 14). After consultation with a vocational expert, the ALJ determined the grids mandated a finding of not disabled. (Tr. 20).

Claimant contends the ALJ failed to develop the record with regard to her hand, wrist, and right elbow impairments. On March 1, 2004, Claimant reported swelling in her hands, knees, legs and feet. She had a history of carpel tunnel and aching knees.

Claimant was seen by Ms. Kristin Ahdunko, a physician's assistant. Ms. Ahdunko found Claimant had positive Phalen's and Tinel's signs. Claimant reported pain in her metacarpel joints in her hands and had decreased strength. Claimant also had red spots on the palms of her hands. Ms. Ahdunko diagnosed Claimant with swelling and pain in her hands and joints and possible Raynaud's disease. (Tr. 326).

Claimant reported again to Ms. Ahdunko for a follow-up visit on March 29, 2004. She found Claimant to have positive Tinel's signs in the right wrist with tingling in the thumb and forefinger. She diagnosed Claimant with Raynaud's and carpel tunnel. (Tr. 324).

On June 19, 2006, Claimant was attended by Ms. Ahdunko reporting pain in her finger joints as well as pain in her elbows and shoulders. She noted Claimant's fingernail beds were whitish/pale. Ms. Ahdunko found Claimant positive for Tinel's and Phalen's signs. She diagnosed Claimant with Raynaud's, carpel tunnel, and depression. (Tr. 284).

On August 7, 2006, Claimant reported numbness in her ring fingers, lower forearms, and wrists. She diagnosed Claimant with rheumatoid arthritis and ulnar nerve impingement. (Tr. 279).

On October 24, 2006, Claimant reported that her fingertips

were getting numb. (Tr. 278).

On January 6, 2007, Claimant was evaluated by Dr. Ravinder R. Kurella. Claimant reported pain in the small joints of her hands, elbow, shoulders, and feet. She rated the pain as 7 out of 10 in intensity and on bad days a 10 out of 10. Dr. Kurella concluded Claimant had a history of hypertension under poor control, full range of motion of her back associated with pain, full range of motion of her neck, full range of motion of her bilateral hip joints, associated with pain on internal and external rotation on both sides, full range of motion of the knee and ankle joints, full range of motion of her shoulder joints associated pain on both sides, full range of motion of her elbow and wrist joints, negative straight leg raising, and normal flexion of the great toe. (Tr. 303-09).

On January 24, 2007, Claimant reported to Ms. Ahdunko that she had redness in her hands and swelling in her joints. Her back and wrists also hurt. Ms. Ahdunko found the joints in Claimant's hands to be red and swollen. (Tr. 315).

On September 25, 2009, Claimant was evaluated by Dr. Beau Jennings. Claimant reported to Dr. Jennings that she experienced joint stiffness and occasional swelling in her hands, knees, and feet. (Tr. 431-32). X-rays of Claimant's right wrist, bilateral

7

hands, and right elbow were all within normal limits. (Tr. 433-35). Dr. Jennings also completed a Medical Source Statement. He found Claimant could occasionally lift and carry up to 100 pounds and frequently lift and carry up to 50 pounds. Dr. Jennings determined Claimant could stand, walk, and sit up to 8 hours in an 8 hour workday. Dr. Jennings found no limitations upon the use of her hands. (Tr. 438-43).

Claimant contends the ALJ should have ordered a consultative examination in order to develop the record with regard to Claimant's alleged hand, wrist, and elbow impairments. Generally, the burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability. Branam v. Barnhart, 385 F.3d 1268, 1271 (10th Cir. 2004) citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987). A social security disability hearing is nonadversarial, however, and the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." Id. quoting Henrie v. United States Dep't of Health & Human Services, 13 F.3d 359, 360-61 (10th Cir. 1993). As a result, "[a]n ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the

course of the hearing." Id. quoting Carter v. Chater, 73 F.3d 1019, 1022 (10th Cir. 1996). This duty exists even when a claimant is represented by counsel. Baca v. Dept. of Health & Human Services, 5 F.3d 476, 480 (10th Cir. 1993). The court, however, is not required to act as a claimant's advocate. Henrie, 13 F.3d at 361.

The duty to develop the record extends to ordering consultative examinations and testing where required. Consultative examinations are used to "secure needed medical evidence the file does not contain such as clinical findings, laboratory tests, a diagnosis or prognosis necessary for decision." 20 C.F.R. § 416.919a(2). Normally, a consultative examination is required if

> (1) The additional evidence needed is not contained in the records of your medical sources;
>
> (2) The evidence that may have been available from your treating or other medical sources cannot be obtained for reasons beyond your control, . . .
>
> (3) Highly technical or specialized medical evidence that we need is not available from your treating or other medical sources;
>
> (4) A conflict, inconsistency, ambiguity or insufficiency in the evidence must be resolved, and we are unable to do so by recontacting your medical source; or
>
> (5) There is an indication of a change in your condition that is likely to affect your ability to work.
>
> 20 C.F.R. § 416.909a(2)(b).

9

Claimant notes that her counsel specifically pointed out the need for additional EMG and nerve conduction testing to the ALJ prior to the administrative hearing in a letter dated May 7, 2009. (Tr. 249). Additionally, Ms. Ahdunko recognized the need for EMG testing of Claimant's hands because of the diagnosis of carpel tunnel. (Tr. 284). This testing was not already present in the record and, therefore, an insufficiency existed in the evidence. Further, the medical record consistently demonstrates a potential impairment in Claimant's hands and wrists, including positive results in Phalen's and Tinsel's signs. On remand, the ALJ shall obtain such consultative examination and testing to ascertain whether Claimant has any further impairment in the use of her hands and wrists. Upon obtaining such testing information, the ALJ shall re-evaluate his RFC assessment and include any additional impairments or limitations in the use of her hands and wrists.

**RFC Determination**

Claimant also contends the ALJ's finding that Claimant could perform sedentary work was contradicted by the medical evidence. Claimant indicates that the problems found in the use of Claimant's shoulders by Dr. Jennings and Dr. Kurella should have precluded sedentary work since additional restrictions upon Claimant's ability to reach should have been included in the RFC. At the same

time, this Court is mindful of Dr. Jennings' Medical Source Statement that provided for no restrictions associated with reaching. (Tr. 440). However, since this case is to be remanded on other issues, the ALJ shall reconsider whether further restrictions upon Claimant's ability to reach should be included in the RFC after further evaluation of the medical evidence.

### Use of the Grids

Claimant contends she suffered from non-exertional impairments which made the use of the grids inappropriate. The ALJ determined that the application of Medical-Vocational Rule 201.24 and 201.18 precluded a finding of disability. (Tr. 20). In order to help evaluate the step five requirement, whether or not there are sufficient jobs in the economy that the claimant can perform given his or her age, education, and work experience, the Social Security Administration has created Medical-Vocational Guidelines, also known as "the grids." *See* 20 C.F.R. § 404.1567; 20 C.F.R. Pt. 404, Subpt. P, App. 2; Trimiar v. Sullivan, 966 F.2d 1326, 1332 (10th Cir. 1992). Five degrees of residual functional capacity are outlined in the grids by general exertional level-sedentary, light, medium, heavy, and very heavy exertion. 20 C.F.R. § 404.1569a; Trimiar, 966 F.2d at 1332 n. 22. Residual functional capacity reflects "the maximum degree to which the individual retains the

capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(c). If the ALJ finds that a claimant's exertional capacity, education, age, and skills fit precisely within the criteria of a particular grid level, the ALJ may conclude the claimant is not disabled. Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999). The use of the grids is not appropriate unless the ALJ finds "(1) that the claimant has no significant nonexertional impairment, (2) that the claimant can do the full range of work at some RFC level on a daily basis, and (3) that the claimant can perform most of the jobs in that RFC level." Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993). "[D]isability requires more than mere inability to work without pain. To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment." Furthermore, "the mere presence of a nonexertional impairment does not automatically preclude reliance on the grids." Channel v. Heckler, 747 F.2d 577 at 582 n.6 (10th Cir. 1984). The presence of nonexertional impairments precludes reliance on the grids only to the extent that such impairments limit the range of jobs available to the claimant. Id.

Non-exertional limitations affect a claimant's ability to meet the demands of jobs that do not involve strength. 20 C.F.R. §

404.1569a(a). Examples cited include "(1) difficulty functioning because you are nervous, anxious, or depressed; (2) difficulty with maintaining attention or concentration; (3) difficulty understanding or remembering detailed instructions; (4) difficulty seeing or hearing; (5) difficulty tolerating some physical feature(s) of certain work settings, e.g., you cannot tolerate dust or fumes; (6) difficulty with manipulative or postural functions such as reaching, handling, stooping, climbing, or crawling." 20 C.F.R. § 404.1569a(c).

Claimant identifies the nonexertional impairments from which she allegedly suffers as restriction upon her ability to reach due to shoulder problems. Since the ALJ is re-evaluating on remand his findings as to whether Claimant's shoulder problems create limitations upon her ability to reach, he should also consider whether the application of the grids was appropriate for the same purpose.

Additionally, Claimant contends the ALJ's questioning of the vocational expert failed to include shoulder restrictions. Should the ALJ determine such restrictions are appropriate, he should reformulate his hypothetical questions to the vocational expert to conform to Claimant's limitations.

**Conclusion**

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 12th day of September, 2013.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE